**Sandra Kay HENRY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–86–0832–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 10, 1987.

Michael A. Maness, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Timothy G. Taft, Janice M. Krocker, Harris County Asst. Dist. Attys., Houston, for appellee.

Before EVANS, C.J., and COHEN and HOYT, JJ.

## OPINION

COHEN, Justice.

A jury found appellant guilty of murder and assessed punishment at confinement for life and a $10,000 fine. This is a companion case to *Cook v. State*, No. 1–86–833–CR, before this Court.

The first count of the indictment alleged the offense of murder in two paragraphs, and the second count alleged aggravated robbery. After the aggravated robbery count was quashed on appellant's motion, the State abandoned the first paragraph and proceeded on the second paragraph, which alleged that appellant, intending to cause serious bodily injury, "did cause the death of (Jess Coon) by intentionally and knowingly committing an act clearly dangerous to human life, namely, by hitting (Coon) with a flashlight." Tex.Penal Code Ann. art. 19.02(a)(2) (Vernon 1974).

■ In points of error one and two, appellant challenges the sufficiency of the evidence to support her conviction as a party to the offense. Appellant concedes that the evidence supports her guilt of aggravated robbery, as a party, and of murder, under Tex.Penal Code Ann. art. 7.02(b) (Vernon 1974). However, she asserts that there is insufficient evidence to support the theory submitted in the court's charge, pursuant to Tex.Penal Code Ann. art. 7.02(a)(2), that she "solicited," "encouraged," "directed," "aided," or "attempted to aid" David Lee Cook to murder Coon. Appellant and Cook were tried together by consent on separate but similar indictments. Cook was also convicted of murder and sentenced to life imprisonment.

Viewed in the light most favorable to the verdict, the evidence shows that early on the morning of March 27, 1986, Jess Coon entered a club and ordered a beer. He carried a small suitcase. He was joined by Mazzie Atkinson, a prostitute, who worked at the club. Appellant, a bartender at the club, and David Lee Cook were present, and Cook's girlfriend, Debra Flores, was sitting in her car outside the club, waiting for Cook.

When Coon paid for the beer, he flashed several hundred dollar bills and told Atkinson that if she went to a motel with him, he would smother her with $75,000. Coon then pulled "a great big wad of money" from the suitcase. Both appellant and Cook saw the money. Appellant, who was preparing to leave for an act of prostitution, told Atkinson to keep Coon there until she returned. Flores then entered the bar and conversed with Cook, who was bartending in the appellant's absence. Cook pulled a long flashlight from under the bar and told Flores that it was for "protection."

Appellant returned approximately 45 minutes later and sat at the bar conversing with Cook for another 35 to 45 minutes. Atkinson and Coon had meanwhile agreed to a $200 sex act, but Coon wanted Cook to leave. Consequently, appellant accompanied Cook and Flores outside and gave Cook her car keys. While they were outside, Cook told Flores that he planned to rob Coon. Appellant was three or four feet away, within hearing range. Appellant went back inside. Cook, followed by Flores, drove appellant's car to his residence and ran inside. Flores had previously seen a revolver in the house.

Meanwhile, Atkinson and Coon were in the club engaging in sexual activity for one and one-half to two hours in a small, enclosed booth with waist or chest high walls. At one point, Atkinson stood up and saw appellant carry a bag of garbage toward the side door. This was unusual because the dumpster was near the front door. Atkinson then saw appellant bend down by the opened side door, and a short time later, heard some giggling. Before Coon and Atkinson had finished, Coon paid appellant $100 to join them in the booth. When Atkinson subsequently went to the restroom, she saw Cook there, and he cautioned her to be quiet. Appellant subsequently asked Atkinson if she had told Coon of Cook's return. When Atkinson said no, appellant said, "good, don't ... or please don't, or something like that."

When the sex ended, Coon went to the restroom, and Atkinson went to the bar. Appellant told Atkinson to "get down, get

down," but when Atkinson seemed confused, appellant told her to "go to the bathroom and get dressed and get all your stuff together." As Atkinson did, she saw Cook standing between the restroom doors with a revolver in one hand and the long flashlight from under the bar in the other. When she left the restroom, Atkinson saw Cook standing over Coon, who was face down on the floor. She then saw Cook hit Coon twice with the flashlight, the second time when Coon tried to move or get up. Appellant immediately thereafter began looking for Coon's suitcase containing the money, and she located it. Appellant then searched Coon's body and took his wallet.

Atkinson, Cook, and appellant then left in appellant's car and went to a motel room. When they opened the suitcase, appellant stated that she hoped that they hadn't done this for six or seven hundred dollars. They had not. The suitcase contained $73,000 cash. They divided the money, and then went to appellant's apartment. They learned that Coon was dead from a television report the next day.

Appellant and Atkinson were afraid the police would come to the apartment, so Atkinson disposed of Coon's suitcase and its contents in the apartment trash dumpster. They then took the money and the flashlight and returned to the motel. The following morning, they returned to appellant's apartment, where appellant cleaned the flashlight and threw it in the woods nearby, where it was later found.

At appellant's direction, Atkinson flew to Indianapolis. Appellant later met her there and told Atkinson that Cook initially wanted her to go into the booth and shoot Coon, but that she did not want to do that because she was afraid of shooting Atkinson.

We find the evidence clearly establishes that the appellant acted with intent to promote or assist in the commission of the offense by soliciting, encouraging, directing, aiding, and attempting to aid Cook in its commission, in that: after discovering Coon's wealth, appellant told Atkinson to keep Coon in the bar until she returned; appellant and Cook had a long conversation at the bar; appellant was in a position to overhear Cook tell Flores that he planned to rob Coon; appellant loaned Cook her car so that he could go to his house to obtain a gun; appellant was seen strangely dumping trash and at the side door, where Cook must have reentered because opening the front door would have made noise and alerted Coon to Cook's return; appellant told Atkinson not to tell Coon that Cook had returned; after the offense, appellant hurried to find the suitcase, searched the body, took Coon's wallet, accepted her share of the money, and destroyed and concealed evidence, including the murder weapon.

There is sufficient evidence that appellant intended, and knew that Cook intended, to inflict serious bodily injury or commit an act clearly dangerous to human life, in that: just prior to the offense, Cook had both a large flashlight and a gun in his hand; Cook had asked the appellant to shoot Coon, but she refused only to avoid harm to Atkinson; and just prior to the offense, appellant told Atkinson to get down behind the bar.

Appellant argues that she had no intent or anticipation that Cook would kill Coon, but the intent alleged in the indictment is intent to cause serious bodily injury; intent to kill was not required. *See Ortiz v. State*, 651 S.W.2d 764, 767 (Tex.Crim.App. 1983). Further, the fact that Cook used a flashlight instead of the revolver to cause serious bodily injury neither negates appellant's intent to promote or assist in the commission of the offense, nor her intent to cause serious bodily injury by committing an act clearly dangerous to life.

We overrule points of error one and two.

■ In points of error three and four, appellant contends that the trial court erred in denying her motion for mistrial because of prosecutorial misconduct in the presence of the jury.

During cross-examination of Deborah Flores, Cook's counsel asked Flores where she lived and for whom she worked. The trial court deferred the ruling on the State's objections until the next recess.

The court heard argument from the attorneys, outside of the jury's presence, regarding whether Flores would have to reveal her place of residence and employment. Cook's lawyer stated that he was "less interested" in the place of residence than in the place of employment. He wanted to obtain her sworn application to be licensed by the State as an investigator, in order to impeach her by showing that she had lied under oath in the application. He also wanted to know her supervisor from work and the supervisor's address and phone number. Counsel for appellant, Henry, stated that he wished to cross-examine the witness regarding her employment and employment application and her residence and former places of residence.

The prosecutor responded by repeatedly seeking to present evidence and asked to testify. She asked the court to take judicial notice that neither defendant had asked in their motions for discovery for the address of any witness. The court stated that he would overrule the State's objection and allow Flores to be questioned concerning her residence location. The prosecutor again asked to be sworn in to testify, and the court again refused.

The prosecutor then stated to the court that confidential information was communicated to Houston Police Department Detective Osterberg on the previous Saturday that David Cook had been looking for Flores in order to harm her and prevent her from testifying at the trial scheduled again on October 6th (the hearing here involved took place on October 9). The prosecutor stated that on October 3rd, she had talked with the manager of Flores' former place of employment, who had told her that David Cook had been there several times. The information was given to Detective Osterberg by an unknown informant whom he had never spoken with before. The informant stated the defendant's name and Flores' name, knew that the trial was starting on Monday, mentioned the name "Harry," who the prosecutor thought was Harry Berkman, an associate of appellant's, and the informant referred to a specific conversation, appeared frightened, and stated that he thought that Flores' life was

in danger. As a result, the prosecutor and Osterberg arranged 24–hour police protection, the first time that either had ever sought such protection for a witness. The prosecutor stated that Flores had three children residing with her and that she also resided with other people who had children and that she could not relocate. The court overruled the State's objections.

The following then transpired in the presence of the jury:

"BY MR. THOMAS:

Q. You are the same Debra Flores that testified yesterday in this case?

A. Yes, sir.

Q. Where do you presently reside?

A. 11129—

MRS. KROCKER: Excuse me, Your Honor, but with all due respect to the Court, I feel that I have an obligation to protect this witness, and I'm instructing the witness not to answer.

MR. MANESS: May we have the jury excused, please?

THE COURT: The jury is retired, please.

(The jury is retired from the courtroom.)

MR. MANESS: Your Honor, our position is that this is an obstruction of justice and a contempt of court and we ask that the Court [after] appropriate notice given and cite her for contempt of court and as well as the witness, assuming she persists in her refusal to answer.

THE COURT: Counsel, the Court has just prior to bringing the jury in to this courtroom ruled that the witness would be required to answer the questions as to her present residence and her present employment. The Court feels that your instruction to her is in disobedience of that ruling by the Court. Young lady [addressing the witness], I'm going to instruct you one more time that you are to answer the questions propounded to you by defense attorneys in regards to your present residence and your present employment. Do you understand the instructions and do you understand that this court has the authority—

THE WITNESS: Yes, sir, I do.

THE COURT: —to hold you in contempt of court for failure to answer?

THE WITNESS: Yes, sir, I do.

BY MR. THOMAS:

Q. Where do you live?

A. I refuse to answer.

Q. Where do you work?

A. I refuse to answer that question.

Q. Who is your supervisor?

A. I refuse to answer that question.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: Counsel, do you persist in your instruction to this witness?

MRS. KROCKER: Your Honor, I'm really sorry, Judge. You are going to do it to me yet. I thought when I became a lawyer, I never would do it to a lawyer; but I can't let her do that, I just can't. I think I need a lawyer.

THE COURT: Court's in recess.

Appellant argues that the court should have granted his motion for mistrial because of the prosecutor's misconduct in front of the jury and claims that such misconduct rendered the trial fundamentally unfair, resulting in the denial of due process of law under the 14th Amendment of the United States Constitution.

Appellant first argues that Flores' initial response, "11129," the street numbers of a residence address, indicates that she was willing to reveal her residence, until the prosecutor's instructions prompted her to refuse. Thus, appellant argues, a willing witness was silenced by a prosecutor's instruction to defy a court order and refuse to testify. Appellant argues that this is "functionally equivalent to the knowing suppression of evidence or to the knowing subornation of perjury." We disagree.

We have found no case that has reversed for prosecutorial misconduct, i.e., the suppression of evidence, where the defense knew that the State possessed the suppressed evidence and sought disclosure, but the court denied the disclosure. This is not suppression of evidence by the prosecutor or subornation of perjury. The prosecutor did not prevent disclosure of evidence; ultimately, the court did. Nor is this a case where the State allowed perjury to go uncorrected, as in *Alcorta v. Texas*, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957), or where exculpatory evidence was not revealed. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Two of the cases relied on by appellant, *Miller v. Pate*, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967), and *Brady*, are distinguishable, and a third, *Donnelly v. De-Christoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), supports affirmance. As the *Donnelly* court held in distinguishing *Brady* and *Miller*, "here there was neither the introduction of specific misleading evidence important to the prosecution's case in chief nor the nondisclosure of specific evidence valuable to accused's defense." 416 U.S. at 647, 94 S.Ct. at 1873. We do not view the prosecutor's action as suppression or misconduct, in view of the fact that the judge ultimately ruled for the State.

Appellant next argues that the prosecutor's disobedience of the judge's order must have informed the jury to conclude that appellant and Cook posed such danger to Flores that the prosecutor felt it necessary to risk a contempt citation in order to protect Flores. The prosecutor's only statement before the jury that could have implied that was, "I feel that I have an obligation to protect this witness,...." The jury was immediately excused. The prosecutor did not say from what or whom protection was needed and never again mentioned the need to protect a witness. It is unlikely that a jury of laymen would have necessarily assumed from this that appellant or Cook had threatened Flores. Appellant cites no cases reversing judgments based on inferences this tenuous. Much clearer misconduct by the prosecutor in *Donnelly* was held to be too ambiguous to constitute a denial of due process. *Id. Dexter v. State*, 544 S.W.2d 426 (Tex.Crim. App.1976), where the prosecutor wheeled a cabinet labeled "organized crime" into the courtroom in the jury's presence, is relied on by appellant, but was a case of greater and more obvious prejudice.

Appellant finally argues that, "whether or not the trial judge changed his ruling as the result of the prosecutor's contumacious behavior, the *appearance* created by the sequence of events leading to that change of mind is of a judge being bludgeoned into submission by a prosecutor determined to have her own way." Appellant cites *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 94 L.Ed. 11 (1954), for the proposition that "justice must satisfy the appearance of justice." The trial judge allowed Flores to keep secret her residence location, but he required her to state the city in which she lived and to produce her job application for appellant's review. In addition, the court ruled that appellant would have the right to talk with Flores' job supervisor and that the State would have to produce the names of the three adults with whom Flores lived.

We do not find that these events created the appearance of a judge bullied and intimidated by an assistant district attorney. We judicially notice that the district judge who tried this case was not the elected judge of the 177th District Court of Harris County, but a visiting judge from another county. It is difficult to imagine anyone less likely to be "bludgeoned into submission" by a Harris County assistant district attorney than a visiting district judge who does not have to stand for election in Harris County.

Points of error three and four are overruled.

Appellant argues in the seventh point of error that the court erred by instructing the jury, over timely objection, on the law of parties, which was not alleged by the indictment, thereby depriving her of her right to due process of law under the Fourteenth Amendment of the United States Constitution. Appellant concedes that *Pitts v. State*, 569 S.W.2d 898, 900 (Tex. Crim.App.1978), resolves this issue against her, but seeks to preserve it for further appellate review. Although appellant's argument on this point is persuasive, *see Cola v. Reardon*, 787 F.2d 681 (1st Cir. 1986), we are bound to follow *Pitts*.

The seventh point of error is overruled.

■ In the fifth point of error, appellant asserts that the trial court's refusal to permit defense counsel to question prosecution witness Deborah Flores to determine her residence address and place of employment violated appellant's rights to confrontation, cross-examination, and due process of law, under the Sixth and Fourteenth Amendments of the United States Constitution.

Some facts pertinent to this point of error are recited above in our discussion of points of error three and four. The following facts are necessary to decide the present contention regarding denial of cross examination.

Flores testified that she had resided at her present address for only one month and knew no one in the neighborhood, except the three adults with whom she lived. Although she had not been threatened and had heard of the threats against her only from Detective Osterberg, she testified that appellant's co-defendant, David Cook, the supposed author of the threats, had asked her to leave town.

The trial court withdrew its previous order compelling Flores to testify and ruled that she could answer the question about her residence by providing only the name of the city where she lived and that the defendant's request for information about Flores' employment would be satisfied by requiring the State to produce the records of her employment application and her supervisor. The court also required the State to disclose the names of three adults with whom Flores lived.

The record reflects that prosecutor provided the employment records, which were brought to court by the records custodian of the security company for whom Flores worked. The record further reflects that a man residing in the same house as Flores appeared in court, had agreed to talk to appellant's counsel, was under subpoena, and was available to testify, subject to call.

Although appellant continued to object to the denial of cross-examination, the record reflects no cross-examination of Flores regarding her employment records, no cross-examination of the records custodian, and

no cross-examination of persons residing with Flores.

Appellant relies on *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), and *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), both of which we find to be distinguishable. In *Alford*, the trial court "cut off in limine all inquiry" concerning the witness' residence, and additionally, the government made no showing of any threats against the witness, while the defendant offered to show that the witness was in federal custody, a fact that could have severely damaged his credibility. None of these facts are present in the instant case. In *Smith*, the trial court refused to allow any questioning concerning the true name or address of a State's witness who had lied under oath concerning his name when testifying under direct examination. As in *Alford*, there was no showing in *Smith* of threats or any other reason to justify the limitation upon cross-examination.

Texas and federal courts have upheld a trial court's discretion in limiting cross-examination concerning a witness' address, when the State has shown threats against the witness. *See Saunders v. State*, 572 S.W.2d 944 (Tex.Crim.App.1978); *United States v. Alston*, 460 F.2d 48 (5th Cir.1972). The State made such a showing in the instant case. In addition, the court did not deny all inquiry into the question of residence but required the witness to produce her employment application, name of her present employer, the name of the city in which she lived, and the names of the only persons in the neighborhood whom she admitted knowing. Thus, "all inquiry" was not cut off in the instant case, as it was in *Alford* and *Smith*.

Finally, as appellant states in his brief, "both Deborah Flores and Mazzie Adkinson readily admitted that they were outrageous, unmitigated, bald-faced liers," and that their "credibility was already shaken by their admissions that they had repeatedly lied to the police and grand jury about the facts of this case and, in the case of Mazzie Adkinson, by her admission that she had been a heavy drug user."

In *Saunders*, the court analyzed the Supreme Court holdings in *Alford* and *Smith* and concluded: "[I]t is this right to an effective cross-examination generally, not the address of the witness specifically, to which these cases hold the defendant is entitled." 572 S.W.2d at 949.

Under the record before us, we cannot conclude that the trial court's ruling denied an effective cross-examination of Deborah Flores.

The fifth point of error is overruled.

The sixth point of error contends that the court violated appellant's rights to confrontation and cross-examination and to due process of law under the Sixth and Fourteenth Amendments to the United States Constitution when it refused to permit defense counsel to question prosecution witness Mazzie Atkinson in order to determine her residence.

Mazzie Atkinson testified that she lived in Splendora, Texas, but declined to state the address. She testified that she had been at that address for three weeks and did not want to reveal it because she was afraid of harm from David Cook or his friends and did not want to involve the person with whom she lived. She testified on cross-examination that she had lived with her brother in Splendora for four to five months immediately before moving to her address at trial. The counsel for co-defendant David Cook stated to the court that he knew the address in Splendora of Atkinson's brother.

Appellant's counsel objected that the State had failed to show a sufficient basis for Atkinson's fear and stated that since Atkinson had admitted to being a dope addict, to lying to the police, and to being involved in a series of crimes, it was necessary to know her address to see if she was living with a narcotics dealer or was dealing or using narcotics. Atkinson later testified that her boyfriend did not sell or use narcotics, and also testified about her own current use of controlled substances.

The record thus reflects that Atkinson had lived at her address for a short time, and while she had not been threatened, she

was apparently aware of the threats against her former roommate and fellow State's witness, Deborah Flores. The record further reflects that Atkinson was thoroughly cross-examined and impeached.

Neither *Alford* nor *Smith* requires reversal on these facts. Cases like *Saunders, Alston,* and *Carmona v. State,* 698 S.W.2d 100 (Tex.Crim.App.1985), indicate that the trial court has discretion, and that appellate courts will examine the entire record to determine whether the accused was denied effective cross-examination.

We hold that appellant was not denied an effective cross-examination of Mazzie Atkinson.

The sixth point of error is overruled.

The judgment is affirmed.