In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-04-01139-CR
____________

DAVIS JOSEPH HOANG, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 176th District Court 
Harris County, Texas
Trial Court Cause No. 962102




O P I N I O N
          Appellant, Davis Joseph Hoang, pleaded not guilty to the felony offense of
murder. See Tex. Pen. Code Ann. § 19.02(b)(1)–(b)(2) (Vernon 2003). A jury
found him guilty and sentenced him to 20 years in prison. In two issues, appellant
contends the evidence is legally and factually insufficient to sustain his conviction. 
We conclude that the evidence is legally and factually sufficient to sustain
appellant’s conviction as a party to murder and therefore affirm. We thus need not
address the sufficiency of the evidence to establish appellant’s guilt as the primary
actor. See Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999) (holding when
not possible to tell whether jury found appellant guilty on specific theory and jury
charge authorizes jury to convict on several different theories, verdict of guilt will
be upheld if evidence is sufficient on any one theory). 
Background
          Katherine Nguyen, a friend of complainant, Steven Duc Tran, testified that
on September 17, 2003, at 7:00 p.m., complainant took her to a friend’s birthday
party at a restaurant, where they joined about 25 people. Complainant sat at a table
with appellant and Anthony Hoang, appellant’s brother, consuming alcohol, while
Katherine sat at another table. About one and one-half hours later, the group
decided to move the party to a karoake bar.
          Believing that complainant was too intoxicated to drive, Katherine asked
someone to drive complainant’s car to the karaoke bar. Complainant, Katherine,
and Anthony rode together in a car driven by appellant. During the ride to the bar,
Anthony asked complainant why they no longer hung out together, but the question
appeared friendly, and everyone was getting along. The group made several short
stops on the way, and Anthony and appellant continued to drink alcohol. 
          At around 12:30 in the morning, complainant retrieved his car keys and left
the bar with Katherine. Appellant and Anthony also left the bar. As complainant’s
and appellant’s cars approached the Southwest Freeway, complainant’s car was in
front of appellant’s car. As complainant drove his car onto an entrance ramp to the
Southwest Freeway, complainant told Katherine that he had heard a gunshot and
said, “I hate when they’re drunk because they always start shooting for no reason.” 
Appellant then drove his car to the lane immediately to the left of complainant’s
car, and Katherine saw Anthony shoot at least four gunshots into complainant’s
car, killing him. Appellant and Anthony quickly drove from the location. 
Katherine managed to stop the moving car on the side of the freeway, where she
was met by Anh Lu and Misty Perez, who drove up behind them. Katherine told
them that complainant was shot, and, although Katherine did not say who had shot
complainant, Misty, Anthony’s girlfriend, immediately thought it was Anthony. 
When Anh and Misty left the location, Misty called Anthony to tell him that
complainant had been shot. She went to Anthony’s house and saw appellant and
Anthony, who both appeared nervous. 
          Appellant decided to return to the Southwest Freeway to see what had
happened, while Anthony and Misty drove to Martin Vuong’s house. Anthony
gave Martin a bag that contained pieces of the gun that Anthony had used to kill
complainant. Later that morning, at around 1:45 a.m., police officers arrested
Anthony for driving while intoxicated (DWI). While officers were arresting
Anthony, appellant approached and attempted to talk to them. The officers would
not release Anthony’s car to appellant because he was too intoxicated to drive, but
they released it to Misty. When Anthony was arrested, he had a magazine for a
Glock pistol in his pants and wore an ankle holster on his leg, but he had no
firearm in is his immediate possession, although a .22 pistol was later found in the
trunk of the car. The next morning, appellant and Jemille Javier, a friend of
appellant and Anthony, instructed Misty not to tell anyone what had happened.
          Jemille testified that she and appellant bailed Anthony out of jail for the
DWI. Anthony asked Jemille to lie to police officers by telling them that she was
in her car behind appellant’s car on the Southwest Freeway, that she had followed
appellant and Anthony home, and that nothing had happened on the way back to
appellant’s and Anthony’s home. Jemille initially lied to the officers, but later
recanted the story, ultimately telling them that she was at another location at the
time of the shooting.
          Later that day, as officers attempted to execute an arrest warrant for
Anthony, they encountered appellant, who agreed to give a statement that was
recorded on videotape at the police station. Appellant orally waived his statutory
rights, which were read to him by Sergeant Ferguson. Appellant described himself
and Anthony as “drunk” on the night of the shooting. He had driven Anthony,
complainant and Katherine from the party at the restaurant to the karaoke bar,
making several stops along the way. Appellant and Anthony left the bar in
appellant’s car and got behind a slow moving car. As appellant entered the
entrance ramp onto the Southwest Freeway, he got his fully loaded Glock .40
caliber gun and shot once into the air “just for fun,” explaining that “[w]hen I get
drunk I just shoot the gun.” Appellant initially told police officers that he was
driving “normal” at around 80 miles per hour at the time of the shooting and that
he was completely unaware that Anthony would shoot anyone, stating that he
thought Anthony was “just going to shoot in the air.” As the interview progressed,
however, appellant changed his story. Appellant said that he was “assuming
[Anthony] got mad at the car in front” of them because “they were driving slow”
and that when Anthony asked appellant for the gun, Anthony said something like,
“Fuck them niggers, give me the strap.” Understanding that “strap” meant gun,
appellant handed the gun to Anthony. Anthony told appellant to “pull up,” and
appellant tried “to hug up next to” and at “the same speed as the car next to me,”
while driving at about 50 to 60 miles per hour. Anthony immediately shot the gun,
emptying the whole clip. Appellant believed that Anthony’s hand was completely
out of appellant’s car when the gun was fired because none of the fired hulls ended
up in appellant’s car. After the gunfire, Anthony told appellant to “floor it,” and
appellant drove to their parents’ house. Anthony received a phone call from either
Anh or Misty, telling him that complainant had been shot. 
          Appellant said on the videotape that he decided to return to the scene of the
shooting “to see if [complainant] was okay,” but when he got to the scene, he did
not stay because police and paramedics were already there, causing appellant to
believe that complainant was all right. When he returned to his house, appellant
learned that Anthony had been arrested for DWI. Appellant bailed Anthony out of
jail in the morning and told Anthony that he saw on the news that complainant had
died. During the course of the evening, neither appellant nor Anthony had any
arguments or disagreements with complainant, whom they considered a friend.
          At trial, the State established that appellant purchased a Glock firearm from
a licensed gun dealer four months before complainant’s death. The State also
presented testimony from a police officer who examined complainant’s car. 
Complainant’s car had nine bullet holes resulting from bullets that entered through
the driver’s side of the car. Complainant’s car had bullet strikes only to the
driver’s car door area, with no strikes to the hood, rear, or tires. A medical
examiner examined complainant’s body and found five bullet holes on his left side. 
          At trial, the defense presented testimony from Anh Lu, Anthony and
appellant. Anh testified that she saw appellant’s car gradually switch lanes on the
Southwest Freeway, ending up in the lane next to complainant’s car, and that
appellant drove the car normally, not trying to slow down or speed up as the gun
was fired. Anthony testified that he pleaded guilty to murder and that appellant
was not responsible for complainant’s death. Anthony and appellant both testified
that Anthony “grabbed” the Glock from appellant, appellant never handed Anthony
the gun, Anthony never asked appellant to drive his car in any direction, and
appellant never altered the course of his driving in any way intended to assist
Anthony. Anthony also said that he was not shooting towards complainant’s car. 
Appellant explained that his videotaped statement to police officers was
involuntary and coerced, and that he made up the story on the videotape so that he
could go home quickly. 
Sufficiency of Evidence
          Appellant’s challenge to the legal and factual sufficiency of the evidence is
premised on his assertions that (1) there is no evidence that appellant intended to
kill or cause serious bodily injury to complainant, (2) Anthony and complainant
were friends and did not argue that night, (3) the evidence of appellant’s
involvement does not show that appellant knew that Anthony would shoot into
complainant’s car because there is no evidence of any prior agreement between
appellant and Anthony for Anthony to shoot complainant, (4) the evidence of
appellant’s involvement does not show that appellant knew that Anthony was
shooting into the car after appellant pulled alongside the car, and (5) no evidence
shows that appellant “shared his brother’s design” in committing a “road rage.” 
Appellant argues that at most, the evidence establishes the criminal mental state of
“recklessness” and thus appellant is not guilty of murder. 
Law of Parties
          Our Texas penal code states that “[a] person is criminally responsible as a
party to an offense if the offense is committed by his own conduct, by the conduct
of another for which he is criminally responsible, or by both.” Tex. Pen. Code
Ann. § 7.01(a) (Vernon 2003). Criminal responsibility is defined in several ways,
one of which is that the defendant, “acting with intent to promote or assist the
commission of the offense . . . solicits, encourages, directs, aids, or attempts to aid
the other person to commit the offense.” Id. § 7.02(a)(2).
          When a party is not the “primary actor,” the State must prove conduct
constituting an offense plus an act by the defendant done with the intent to promote
or assist such conduct. Beier v. State, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985);
Miller v. State, 83 S.W.3d 308, 313 (Tex. App.—Austin 2002, pet. ref’d). 
Evidence is sufficient to sustain a conviction under the law of parties if it shows
that the defendant was physically present at the commission of the offense and
encouraged the commission of the offense either by words or other agreement. 
Tarpley v. State, 565 S.W.2d 525, 529 (Tex. Crim. App. 1978); Miller, 83 S.W.3d
at 313–14. Since an agreement between parties to act together in common design
can seldom be proven by words, the State often must rely on the actions of the
parties, shown by direct or circumstantial evidence, to establish an understanding
or a common design to commit the offense. Miller, 83 S.W.3d at 314. The
agreement, if any, must be made before or contemporaneous with the criminal
event, but in determining whether one has participated in an offense, the court may
examine the events occurring before, during and after the commission of the
offense. Beier, 687 S.W.2d at 3–4; Miller, 83 S.W.3d at 314. Circumstantial
evidence may suffice to show that one is a party to an offense. Wygal v. State, 555
S.W.2d 465, 469 (Tex. Crim. App. 1977); Miller, 83 S.W.3d at 314. While mere
presence at the scene, or even flight, is not enough to sustain a conviction, such
facts may be considered in determining whether an appellant was a party to the
offense. Valdez v. State, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979) (op. on
reh’g); Miller, 83 S.W.3d at 314. 
          If the evidence, however, shows the mere presence of an accused at the
scene of an offense or his flight from the scene, without more, then it is insufficient
to sustain a conviction as a party to the offense. Valdez, 623 S.W.2d at 321; Scott
v. State, 946 S.W.2d 166, 168 (Tex. App.—Austin 1997, pet. ref’d). Standing
alone, proof that an accused assisted the primary actor in making his getaway is
likewise insufficient, even though the accused’s conduct may constitute the
independent offense of hindering apprehension or prosecution. Scott, 946 S.W.2d
at 168. Similarly, evidence that a person simply handed the deadly weapon to the
attacker does not in and of itself show an intent to commit murder; intent can only
be inferred from handing the attacker the deadly weapon “if other circumstances
warrant.” Navarro v. State, 776 S.W.2d 710, 714 (Tex. App.—Corpus Christi
1989, pet. ref’d); see Cordova v. State, 698 S.W.2d 107, 112 (Tex. Crim. App.
1985). 
Legal Sufficiency of the Evidence
          In a legal sufficiency review, we view all of the evidence in the light most
favorable to the verdict and then determine whether a rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The jurors are the exclusive
judges of the facts, the credibility of the witnesses, and the weight to give their
testimony. Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). A
jury is entitled to accept one version of the facts and reject another, or reject any
part of a witness’s testimony. Id.
          Viewing the evidence in a light most favorable to the jury’s verdict, the
evidence shows that appellant fired his Glock firearm into the air as his car entered
the Southwest Freeway, as he sometimes did for fun when he was intoxicated. 
Anthony, who was also intoxicated, then became angry at the slow driver in front
of appellant’s car. Anthony used expletives about the people in the slow car and
asked appellant for the gun, directing appellant to “pull up.” Appellant then
handed Anthony the gun and drove his car parallel to the slow driver’s car, while
Anthony unloaded nine rounds into complainant’s car, killing complainant. The
physical evidence shows multiple gunshots that struck into the driver’s door of the
car only and multiple gunshot wounds that struck complainant.
          This evidence establishes that appellant assisted Anthony by giving him the
loaded firearm that killed complainant, driving his car parallel to, close to, and at
about the same speed as complainant’s car, and enabling Anthony to be in a
position to shoot complainant accurately and repeatedly. Moreover, appellant
drove Anthony away from the location after the shooting and tried to cover up the
crime by instructing Misty not to tell anyone what had happened. Accordingly, we
hold that the evidence is legally sufficient to sustain appellant’s conviction for
murder as a party to the offense. 
Factual Sufficiency of the Evidence
          “In a factual sufficiency review, we view all the evidence in a neutral light,
both for and against the finding, and set aside the verdict if ‘proof of guilt is so
obviously weak as to undermine confidence in the jury’s determination, or the
proof of guilt, although adequate if taken alone, is greatly outweighed by contrary
proof.’” Vodochodsky v. State, 158 S.W.3d 502, 510 (Tex. Crim. App. 2005)
(quoting Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). “In
conducting such a review, we consider all of the evidence weighed by the jury,
comparing the evidence [that] tends to prove the existence of the elemental fact in
dispute to the evidence [that] tends to disprove it. We are authorized to disagree
with the jury’s determination even if probative evidence exists which supports the
verdict, but we must avoid substituting our judgment for that of the fact-finder.” 
Id. The jurors are the exclusive judges of the facts, the credibility of the witnesses
and the weight to be accorded their testimony. Margraves, 34 S.W.3d at 919. The
jury is free to reject any or all evidence presented at trial. Id.
          Evidence that tends to dispute appellant’s guilt as a party to murder comes
primarily from the trial testimony of appellant, Anthony and Anh. Appellant and
Anthony testified that appellant was unaware of how Anthony felt about the slow
driver. Also according to Anthony and appellant, Anthony grabbed the gun from
appellant, rather than being handed the gun by appellant. Appellant, Anthony, and
Anh also denied that appellant drove his car in any manner that would assist
Anthony in shooting complainant. Additionally, appellant points to the undisputed
evidence that shows that during their time together over the course of the evening,
appellant and Anthony were friendly with complainant and no arguments or
disagreements occurred among them. 
          Evidence that tends to prove appellant’s guilt as a party to murder comes
primarily from appellant’s videotaped statement and the physical circumstances of
the shooting. At the time of the shooting, Anthony and appellant were intoxicated. 
Appellant’s videotaped statement includes appellant’s admission that before
handing the gun to Anthony, appellant knew that Anthony was angry with the slow
driver, because Anthony used expletives about the people in the slow car while
requesting appellant’s gun. At Anthony’s request to “pull up,” appellant drove the
car “to hug up next to” complainant’s car and at “the same speed.” The physical
evidence is consistent with appellant’s statements made on the videotape that he
drove his car parallel to and at the same speed as complainant’s car. The tight
pattern of gunshots that struck only the driver’s area of complainant’s car and the
medical examiner’s findings that complainant had five gunshot wounds that
entered the left side of his body also suggest that the shooter’s car was driving (1)
at the same pace as complainant’s car and (2) parallel to complainant’s car for the
entire shooting episode. 
          Although no evidence in the record suggests that either Anthony or appellant
disliked or had a fight with complainant and no direct evidence suggests any prior
agreement between appellant and Anthony to shoot complainant, there is evidence
that appellant knew that Anthony was angry about the slow driver in front of them
and that appellant knew that he and Anthony liked to shoot guns when they were
drunk. The jury could have reasonably inferred that appellant assisted Anthony in
shooting the slow driver because appellant handed the gun to Anthony while
knowing these circumstances, sped up, positioned his car next to the slow driver,
sped away, and attempted to cover up the incident. We disagree with appellant’s
assertion that there is no evidence that he even knew that Anthony was shooting
towards the driver of the slow car. The physical evidence shows multiple gunshots
only to the driver’s door of the slow moving car, and the medical examiner found
multiple gunshot wounds to complainant’s body. The physical evidence, therefore,
confirms appellant’s videotaped statement in which he acknowledged that he drove
his car parallel to the slow moving car as Anthony shot the gun. The jury could
reasonably infer that appellant acted with the intent to promote and assist
Anthony’s commission of the offense because appellant drove his car in a manner
that facilitated Anthony’s striking only the driver’s car door area, including the
driver of the car, multiple times at over 50 miles per hour on the freeway. 
          Appellant suggests that his situation is similar to Vodochodsky v. State in
which the Court of Criminal Appeals reversed a capital murder conviction for
factual insufficiency under the law of parties. 158 S.W.3d at 511. The court noted
that there was no evidence of any specific mention of any intent to kill a peace
officer, no suggestion in the record that Vodochodsky was planning the event with
the shooter, no evidence that Vodochodsky did any affirmative act to assist the
shooter with the plan, and that the evidence of a second shooter on the roof was
“not established.” Id. at 510. The court also noted that other evidence suggested
that Vodochodsky was not working with the shooter because he whispered a
warning to someone and did not purchase ammunition. Id. at 510–11. The court
determined that “Vodochodsky had the bad luck of being the friend and roommate
of a man determined to kill police officers and himself.” Id. at 511. The court
concluded that “proof of Vodochodsky’s guilt was so weak as to undermine
confidence in the jury’s determination.” Id. Unlike Vodochodsky, the
circumstantial evidence in the record shows that appellant acted with intent to
assist the shooter by committing the affirmative acts of handing the shooter the
murder weapon and driving the car in a manner that facilitated the shooter’s ability
to hit his target, the slow driver, multiple times at over 50 miles per hour on a
Houston freeway. It also shows that appellant drove Anthony away from the scene
of the crime, and that appellant attempted to cover up the incident.
          Appellant also contends that his situation is similar to that in Schiffert v.
State, in which the Fort Worth Court of Appeals found that evidence was factually
insufficient to support a murder conviction because the proof of Schiffert’s guilt
was too weak to support the finding of guilt beyond a reasonable doubt. 157
S.W.3d 491, 498–99 (Tex. App.—Fort Worth 2004, pet. granted). In Schiffert,
there was “no evidence of any kind of conversations or planning” on the part of
Schiffert and the person who stabbed the deceased, and there was no evidence that
Schiffert knew that the person who stabbed the deceased intended to stab the
deceased or knew that the stabber “even had a knife.” Id. at 498. The court further
noted that a witness’s testimony suggested that Schiffert may not have been aware
that the deceased was being stabbed by the person and that Schiffert’s attempts to
avoid the police did not necessarily suggest that he had acted with intent to
promote or assist in the stabbing. Id. Unlike Schiffert, the record includes
evidence that appellant’s firearm caused the death of complainant and that
appellant handed his loaded gun to Anthony immediately before the shooting,
knowing that Anthony was angry at the slow driver. Also unlike Schiffert, the
circumstantial physical evidence leads to a reasonable inference that appellant was
aware that Anthony was shooting his gun at the slow driver because appellant
drove his car at the same approximate speed as and parallel to complainant’s car,
thereby enabling Anthony to accurately and repeatedly strike complainant.
          Viewing all of the evidence in a neutral light, both for and against the jury’s
finding of guilt, we conclude that the proof of guilt is not so obviously weak as to
undermine confidence in the jury’s determination and that the proof of guilt is not
greatly outweighed by contrary proof. See Miller, 83 S.W.3d at 318 (holding
evidence factually sufficient to sustain murder conviction as party to offense when
circumstances showed that Miller drove truck into position that enabled shooter to
kill driver of car with whom Miller had been in traffic altercation, Miller assisted
shooter, his brother, in obtaining murder weapon, and Miller attempted to flee with
shooter). Accordingly, we hold that the evidence was factually sufficient to
support the appellant’s conviction as a party to the offense of murder.
Conclusion
          We affirm the judgment of the trial court.
 
     Elsa Alcala
     Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Alcala.
Publish. Tex. R. App. P. 47.2(b).