David DEAVER, Individually and in His Official Capacity as Superintendent of Menard Independent School District, Appellant,

v.

Loretta BRIDGES, Appellee.

No. 04–00–00478–CV.

Court of Appeals of Texas, San Antonio.

Dec. 13, 2000.

Rehearing Overruled Feb. 20, 2001.

Bridget Robinson, Eric W. Schulze, Walsh, Anderson, Brown, Schulze, & Aldridge, P.C., Austin, for Appellant.

Charla Edwards, Massey, Balentine, Edwards & Psencik, P.C., San Angelo, for Appellee.

Sitting: TOM RICKHOFF, Justice, CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice.

## OPINION

TOM RICKHOFF, Justice.

This school teacher's defamation case is an interlocutory appeal from the trial court's order denying summary judgment to appellant, David Deaver, a school superintendent. To determine whether immunity attaches for professional employees, we hold we must focus on whether discretionary judgments occur within the broad duties of an office rather than on specific acts such as responding to media and third party inquiries. With this focus in mind, we reverse and render judgment in Deaver's favor.

## JURISDICTION AND STANDARD OF REVIEW

As a preliminary matter, this Court has jurisdiction to consider this interlocutory appeal under Civil Practice and Remedies Code section 51.014(a)(5) because it is an appeal from the denial of "a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state[.]"

■ Whether an order grants or denies a motion for summary judgment, we apply the same de novo standard of review on appeal. *San Antonio Express News v. Dracos,* 922 S.W.2d 242, 247 (Tex.App.— San Antonio 1996, no writ). We will uphold a summary judgment only if the record establishes that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law on a ground set forth in the motion. *See* Tex.R. Civ. P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ A defendant who conclusively establishes all the elements of an affirmative defense is entitled to summary judgment. *Cathey,* 900 S.W.2d at 341. Once a movant establishes its right to summary judgment on the basis of an affirmative defense, the nonmovant must respond with reasons for avoiding summary judgment and must support those reasons with proof sufficient to raise a fact issue. *Brooks v. Center for Healthcare Services,* 981 S.W.2d 279, 281 (Tex.App.—San Antonio 1998, no pet.). If the nonmovant responds with proof of a basis for avoiding the movant's affirmative defense, the movant then has the burden to negate the plaintiff's ground for avoidance as a matter of law. *See id.*

## BACKGROUND

Deaver is the Superintendent of the Menard Independent School District ("MISD"). Appellee, Loretta Bridges, was employed by MISD as a teacher under a two-year contract for the period of August 1997 through May 1999. In March 1998, MISD recommended that Bridges' contract be terminated based on allegations that she made a racially derogatory comment about a public school student, and that she intentionally exposed the student to disparagement. Bridges appealed the recommendation, and requested an administrative hearing. An independent hearing examiner, appointed by the Texas Education Agency, concluded that MISD's proposed termination of Bridges' contract was arbitrary, capricious, and not supported by the evidence.

On August 10, 1998, Bridges and MISD entered into a Compromise Settlement Agreement and Full and Final Release of All Claims, under which Bridges agreed to resign. Deaver did not attend the August 10 Board of Trustees' closed session meeting at which the settlement agreement was negotiated. The agreement was signed by Bridges and Margorie Russell, President of the MISD Board of Trustees. The agreement contained the following provision:

[Bridges] will direct any and all employment inquiries to the Superintendent's Office, and then the [MISD] agrees that the Superintendent will respond to all inquiries about [Bridges] from prospective employers or other persons by providing *ONLY* dates of [Bridges'] employment by the [MISD], the capacity in which she was employed, the fact that she resigned, and a copy of the reference letter evidenced by Exhibit "C" hereto. The [MISD] further specifically agrees that no other information and no negative comments concerning [Bridges] or her performance for the [MISD] will be provided to anyone requesting this information through the Superintendent's Office. Nothing in this Settlement and Release shall, however, preclude or prevent the [MISD] from complying with the provisions of any State or Federal laws involving the disclosure of public information pursuant to any lawful requests made under the said laws. The [MISD] agrees to place [Bridges'] letter of resignation in her official personnel file on top of all other

documents and from henceforth, to treat and refer to her separation from [MISD] employment as being caused by such resignation.

On August 11, Deaver participated in a telephone conversation with Jeremy Pafford, a newspaper reporter for the *San Angelo Standard–Times*. On August 13, the newspaper ran the following article, which was also later posted on the newspaper's website:

> A special education teacher who taught for 11 years in the Menard Independent School District has resigned because of findings she used a racial epithet against a student.
>
> Loretta Bridges resigned with one year's pay from Menard ISD Monday night after a compromise was reached between lawyers and the Menard school board, said Superintendent David Deaver.
>
> The Texas Education Agency appointed an independent examiner to go over findings from separate investigations into a January 28 incident in which Bridges was alleged to have made a racial slur to a student, Deaver said.
>
> While there were differences in the findings, Deaver said both investigations did confirm Bridges used a racial epithet.
>
> "It was a racial, very disparaging comment," Deaver said.
>
> Bridges' position has been filled, closing the book on a rather disturbing six months, Deaver said.
>
> "It's one of those situations where we just try now to move on and go about our business," he said.

On August 13, *The Menard News and Messenger* ran a longer article about the Board of Trustees' meeting and the settlement agreement. Although Deaver was quoted in the article, he made no mention of the alleged racial slur or disparaging remark. Deaver also met with representatives of the League of United Latin American Citizens ("LULAC"), and he told them that he was required "by law" to give Bridges a good recommendation.

Bridges sued MISD for breach of contract, and Deaver (in his individual capacity only) for defamation. Bridges alleged that Deaver's statements to Pafford were slanderous and false. Although Bridges mentioned Deaver's comments to LULAC in the petition's statement of facts, the only statements she alleged to be defamatory were Deaver's comments to the newspapers. Deaver moved for summary judgment on the separate grounds of common-law official immunity and express statutory professional immunity. The trial court denied Deaver's motion for summary judgment on both grounds. Bridges' claims against MISD remain pending before the trial court.

On appeal, Deaver challenges only the court's denial of statutory immunity.

## ANALYSIS

Texas Education Code section 22.051 provides immunity for professional employees of school districts, stating that:

> (a) A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee. . . .
>
> (b) This section does not apply to the operation, use, or maintenance of any motor vehicle.
>
> (c) In this section, "professional employee" includes:
>
> > (1) a superintendent, principal, teacher, supervisor, social worker,

counselor, nurse, and teacher's aide; [and]

...

(4) any other person whose employment requires certification and the exercise of discretion.

TEX. EDUC.CODE ANN. § 22.051 (Vernon 1996).

Thus, Deaver was entitled to summary judgment if he conclusively proved all essential elements of Section 22.051 as a matter of law: (1) that he was a professional employee (which Bridges does not dispute); (2) that his actions were incident to or within the scope of his duties (which Bridges does not dispute); (3) that his duties involved the exercise of judgment or discretion on his part; and (4) that his actions were not within the stated exceptions (which neither party asserts). Bridges contends that Deaver's summary judgment proof is insufficient to establish summary judgment as a matter of law because (1) his conduct was ministerial and not discretionary or, in the alternative, (2) there is a fact issue on whether his conduct was discretionary.

 Whether an act is ministerial or discretionary depends upon the ability of the actor to exercise discretion when performing it. In other words, if an edict prescribes the duties to be performed with such precision and certainty so as to leave nothing to the exercise of the actor's judgment, then the act is ministerial. *Down-*

*ing v. Brown,* 935 S.W.2d 112, 114 (Tex. 1996). Ministerial actions require obedience to orders or the performance of a duty to which the actor has no choice. *Id.* Ministerial acts are not limited to those commanded by statute, but may also be imposed by orders or other duties. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 654 (Tex.1994). However, if the actor is entitled to personally deliberate about the manner or means of performance and invoke his or her own judgment, then the act is discretionary. *Downing,* 935 S.W.2d at 114. The distinction between the two is often one of degree because any official act that is ministerial still requires the actor to use some discretion in his or her performance. *Enriquez v. Khouri,* 13 S.W.3d 458, 462 (Tex.App.—El Paso 2000, no pet.). Further, and at least in the school setting, the focus is on the broad category of responsibility involved as opposed to some particular aspect of the responsibility. *Downing,* 935 S.W.2d at 114. For example, if some injury arises from the failure of a teacher to create and post a disciplinary plan, immunity is not dependent upon whether the acts of creating and posting the plan are discretionary or ministerial. *Id.* Rather, those acts are a part of the overall concept of discipline, and whether the teacher is entitled to immunity depends upon whether the overall responsibility to maintain discipline is discretionary or ministerial. *Id.*[1] Therefore, our focus should be on whether Deaver was performing a discretionary function, not on

---

1. In *Downing,* the Texas Supreme Court addressed whether a teacher's maintenance of classroom discipline in accordance with a school district's Discipline Management Plan was ministerial or discretionary. In finding that the teacher possessed immunity, the Supreme Court stated that the focus should be on whether maintaining classroom discipline was a discretionary function. The Plan did not define the teacher's responsibilities with such precision to leave nothing to the exercise of the teacher's discretion or judgment. For example, the Plan did not inform her of what types of discipline to use, what forms of student misconduct should result in disciplinary sanctions, or when or where to discipline the students. The Court reasoned that each of these decisions, which Texas schools routinely leave to its teachers, required the use of professional judgment and discretion. Thus, the teacher established the discretionary element of Section 22.051.

whether he had discretion to do an allegedly wrongful act while discharging that function.

Bridges phrases the issue as whether Deaver's wrongful act was the result of negligence or errors in judgment during the legitimate exercise of his regular duties and in a valid attempt to further the interests of MISD on the one hand, or, on the other hand, whether Deaver's wrongful act was a wilful, malicious, or intentional tort or had he abandoned his official duties and become a "mere intermeddler." Bridges contends making false, defamatory statements to the media and other third parties is not part of the regular duties of a public school superintendent, and cannot be construed as advancing the legitimate function of superintendents or their school districts. Bridges asserts the settlement agreement clearly delineated Deaver's responsibilities, leaving no discretion on his part in carrying out the terms of the agreement. She contends there is nothing equivocal in the agreement that would allow Deaver to "interpret" his duties under the agreement or otherwise exercise individual discretion and judgment. Bridges concludes that because Deaver's tortious acts were ministerial and did not involve the exercise of discretion or judgment, the third element of Section 22.051 was not conclusively established.

While Bridges focuses on Deaver's alleged defamatory statements, Deaver focuses on his interpretation of the settlement agreement. Deaver acknowledges that the information he provided to the newspapers and LULAC went beyond the information referred to in the settlement agreement. But, Deaver contends MISD did not provide him with guidelines on how to interpret a contract; therefore, he had to use his own judgment when interpreting the settlement agreement. Deaver interpreted the settlement agreement as pro-

hibiting or limiting any information MISD could provide about Bridges in response to an employment inquiry. He did not read the agreement as precluding communication to anyone other than prospective employers, because the information set forth in the settlement agreement was information in which a prospective employer would be interested, *e.g.*, the dates of Bridges' employment, the capacity in which she was employed, and the fact that she resigned. Because his interpretation of the settlement agreement, and thus how he responded to outside inquires, was left up to his individual judgment and discretion, Deaver asserts that he conclusively established the third element of Section 22.051 as a matter of law.

## SUMMARY JUDGMENT EVIDENCE

Bridges also argues that Deaver did not meet his summary judgment burden. Bridges focuses on her assertion that she raised a genuine issue of material fact, without explaining how or why Deaver's summary judgment evidence was insufficient. However, she relies on *Foster v. Estrada*, 974 S.W.2d 751, 754 (Tex.App.—San Antonio 1998, pet. denied), an opinion in which a panel of this Court considered the sufficiency of both the movant's and non-movant's evidence. Therefore, we construe Bridges' argument as two-fold: (1) Deaver's summary judgment evidence was conclusory and self-serving and (2) her evidence raised a fact issue.

### DEAVER'S SUMMARY JUDGMENT EVIDENCE

In *Foster*, this Court determined that a school principal's and coach's summary judgment proof did not prove the discretionary element because their affidavits were merely conclusory, self-serving statements. The Fosters argued that these affidavits did not prove that the school principal's and coach's omissions—not preventing their son from entering the

gymnasium—involved the exercise of judgment and discretion.

In the affidavits, the principal and coach each stated, "my actions involved the exercise of judgment and discretion on my part." This Court held that by making this statement, the affiants merely asserted a legal conclusion. *Id.* at 753. The affidavits did not demonstrate how or why the disputed omission was legally characterized as involving the exercise of judgment or discretion. Instead, the statements were merely self-serving assertions. *Id.* Because each statement merely stated a legal conclusion, the affidavits were not sufficient to support summary judgment as a matter of law. Consequently, this Court determined that the principal and coach did not meet their burden in establishing a defense under Section 22.051. *Id.* at 753–54.

Although Deaver's affidavit contains some conclusory statements, he also explains his general duties as a superintendent and his interpretation of the settlement agreement as follows:

When I read the [settlement agreement], I did not read it as precluding communication to anyone other than prospective employers ... because the information to be relayed as set forth in paragraph 8 ... is information in which a prospective employer would be interested.... Paragraph 8 ... begins "[Bridges] will direct any and all employment inquiries to the Superintendent's office, and then the District agrees that the Superintendent will respond to all inquiries about [Bridges] from prospective employers or other persons by providing ..." Taken in context with the rest of the sentence, I read the paragraph to (1) apply only to information given in response to an employment inquiry, and (2) apply to "prospective employers or other persons"

because employing entities, including school districts, usually have an employee of the employing entity, for example, a personnel director, campus principal, or Superintendent, make most of the employment inquiry phone calls. Therefore, I thought the language "or other persons" referred to the employees, agents, and representatives of employing entities who typically make the employment inquiry phone calls.

. . . .

... Superintendents of a[sic] Texas school districts are required to act as the chief administrative officer for their respective District, and are responsible for the day-to-day operations of their District as its administrative manager. As a part of his or her job responsibilities, a superintendent is frequently required to interpret the terms of a contract which he or she is responsible for administering, and to provide information to the representatives of the media and interested members of the public....

Deaver also stated that he was not provided with any guidelines on how to interpret a contract. He said that because he had no transcript or prepared statement to use at either the media interviews or the LULAC meeting, he used his discretion and professional judgment in formulating his responses to the questions that were asked of him.

Deaver's affidavit established that the character of his actions in interpreting the settlement agreement and responding to outside inquiries was discretionary, not ministerial. Because Deaver conclusively proved the third element of Section 22.051, the burden shifted to Bridges to raise a fact issue to negate this element.

### BRIDGES' SUMMARY JUDGMENT EVIDENCE

Bridges asserts she met her burden because her evidence established that (1) Deaver made false, defamatory statements about her, (2) those statements were attributed to him by at least one newspaper reporter, and (3) those statements injured her. The Supreme Court's opinion in *Downing* mandates that this Court broadly interpret discretionary acts. To focus solely on what Deaver said and to whom he spoke would too narrowly analyze discretion. The focus must be on Deaver's exercise of judgment in interpreting the settlement agreement. Because Bridges' summary judgment evidence focused on the allegedly defamatory nature of Deaver's statements, rather than on his interpretation of the settlement agreement, she did not raise a fact issue sufficient to negate the third element of Section 22.051.

### CONCLUSION

Bridges argues that Deaver's comments to the media were excessive given the explicit directions found in the agreement and by this act she was defamed. But we are guided to broadly interpret discretionary acts and focus on the overall responsibility of the official. It is not the individual response to a specific media inquiry or the act of selecting how to interpret a contract that we must focus on to determine whether Deaver was exercising a discretionary or ministerial function. That focus is too narrow. It is the overall responsibilities of a superintendent that must be examined to determine whether personal deliberation and judgment are exercised.

The record presents the reality of a school superintendent's position. Superintends head a public institution of major interest to the community and consequently receive inquiries from interest groups such as LULAC and the community's primary window, the media. A superintendent must decide first whether to accept a call. Unless forewarned of the topic, public officials are doomed to accept most interest group and media calls. When confronted with a specific topic, officials then must select their response. This can require great skill and indeed errors in judgment could result in damaging individual reputations, public acceptance of district programs, or the loss of the superintendent's position. In fact, effectively communicating with the media requires near art form expertise. Like maintaining school discipline, the responsibility to interpret contracts or communicate with the media and other interested third parties is rife with judgment and personal deliberation. And, it being discretionary, we find that Deaver was entitled to summary judgment on his claim of immunity under Section 22.051. We, therefore, reverse the trial court's judgment and render judgment in favor of Deaver.