NO. 07-00-0370-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

SEPTEMBER 27, 2001

_____


JUAN LOUIS CARMONA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 99-430988; HONORABLE JIM BOB DARNELL, JUDGE

_____

Before QUINN and REAVIS and JOHNSON, JJ.

Appellant Juan Louis Carmona appeals from his conviction for murder. He asserts that the trial court improperly charged the jury and that the evidence is legally insufficient to support his conviction. We affirm.

I. BACKGROUND

On June 28, 1999, appellant and three friends demolished a car parked at the house of two persons with whom appellant and his friends were angry. The demolishing of the car was done to a large extent with a metal baseball bat the four had brought with them. After demolishing the car, the four friends happened upon Raymond Tovar, who was walking to a local convenience store to buy cigarettes. Appellant and his friends suspected Tovar of having previously fired a pistol at a group which included appellant. The earlier shooting was not reported to the police because appellant and his friends intended to take care of the matter themselves.

The group cornered Tovar in an alley and beat and kicked him. Appellant at first had the baseball bat which had earlier been used to demolish the car, but evidence indicated that one of the other members of the group took the bat from appellant during the episode. Tovar was severely beaten and died from blunt force trauma to the head which caused several lacerations and fractures of his skull. Appellant gave a statement to the police in which he claimed that he kicked Tovar but that another member of the group used the baseball bat to beat Tovar.

Appellant was indicted and tried for murder. The jury found him guilty and assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for life.

At the guilt-innocence stage of trial the jury was charged in accordance with Penal Code §§ 19.02(b)(2) (murder) and 7.02(a)(2) (criminal responsibility for conduct of another).[1]

By two issues appellant urges us to reverse his conviction. He first asserts that he cannot be convicted of murder on the basis that he was criminally responsible for Tovar's death as a party (Section 7.02 responsibility) unless he had specific intent to cause Tovar's death. Appellant's second issue is premised on the validity of his first issue. His second issue urges that the evidence is legally insufficient to show that he promoted or assisted another or others with the specific intent to kill the deceased. We necessarily address the issues in the order presented.

## II. FAILURE OF THE TRIAL COURT TO PROPERLY
## CHARGE THE JURY
### A. Law

Jury charges are required to set forth the law applicable to the case. See TEX. CRIM. PROC. CODE ANN. art. 36.14 (Vernon 2001). When an issue asserts harmful error in the charge, the first determination to be made is whether error actually exists in the charge. Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App.1984).

---

[1]TEX. PENAL CODE §§ 19.02, 7.02 (Vernon 1999). Further references to a section of the Penal Code will be by reference to "Section_".

The starting point in any statutory construction analysis is the plain language of the statute in question. Brown v. State, 943 S.W.2d 35, 36 (Tex.Crim.App. 1997). We look to the literal text of the statute and apply the plain meaning of its words, unless application or the statute's plain meaning would lead to absurd consequences that the legislature could not possibly have intended, or if the literal language is ambiguous. State v. Webb, 12 S.W.3d 808, 811 (Tex.Crim.App. 2000). A narrow exception allows for the use of extra textual factors for interpretation when the plain language of a statute would lead to absurd results or said language is not plain but rather is ambiguous. Hernandez v. State, 861 S.W.2d 908, 909 (Tex.Crim.App. 1993).

## B. Analysis

Appellant's first issue does not challenge the jury charge because it misstated the applicable law. Rather, he challenges the charge because it did not go further than the statutory language in Section 7.02(a)(2) and add an instruction to the effect that appellant could not be found guilty of murder on the basis that he was criminally responsible for the actions of another person unless the jury found that appellant had specific intent to kill the assault victim. In making his challenge to the failure of the trial court to so charge the jury, he relies primarily on Baldridge v. State, 543 S.W.2d 639 (Tex.Crim.App. 1976), and Flanagan v. State, 675 S.W.2d 734 (Tex.Crim.App. 1984). Appellant reads Baldridge to hold that under the former Penal Code, an actor could not be convicted for murder actually performed by another unless the actor had knowledge of the other's intent to kill the victim. He cites Flanagan for the proposition that a conviction for attempted murder under Section

4

15.01 requires the State to prove that the defendant had specific intent to kill the intended victim. Appellant then analogizes his case to Flanagan and asserts that conviction of murder as a party under section 7.02(a)(2) should also require proof that the defendant charged as a party had specific intent to kill the victim. Appellant acknowledges that certain cases such as Binyon v. State, 545 S.W.2d 448 (Tex.Crim.App. 1976), Gutierrez v. State, 681 S.W.2d 698 (Tex.App.--Houston [14th Dist.] 1984, pet. ref'd), and Henry v. State, 738 S.W.2d 332 (Tex.App.--Houston [1st Dist.] 1987, pet. ref'd), seem adverse to his position.

We disagree with appellant's assertion. As to Baldridge, we first note that the court was considering evidentiary requirements for conviction of murder with malice under a former version of the Penal Code. The term "malice" as either an element of the crime itself or as a consideration in the assessment of punishment for the crime of murder addressed the mental status of alleged perpetrators of a killing, and therefore implicated proof of state of mind. See Smith v. State, 5 S.W.3d 673, 683, 687 (Tex.Crim.App. 1999) (quoting Brown v. State, 171 Tex.Crim. 320, 349 S.W.2d 722, 724 (1961)). "Malice" is not part of the statutory language of either Section 19.02 or Section 7.02.

Second, although the Baldridge opinion stated that for one to be convicted of murder with malice as a principal, the person charged as a principal must have had knowledge of the actual killer's intent to kill the victim, that statement was later qualified even as to the prior statute's murder with malice provision:

5

The record is silent as to any common purpose or design. In situations in which one may be guilty as a principal, the very least that is required in addition to physical presence is encouragement by words or agreement to the commission of the offense. Such agreement must be prior to or contemporaneous with the criminal event. 543 S.W.2d at 643.

We do not consider Baldridge to be controlling of the issue before us.

Flanagan construed the criminal attempt language of Section 15.01. Section 15.01 plainly provides that a person commits an offense if, "with *specific intent to commit an offense*, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended"(emphasis added).

Flanagan did not engraft "specific intent" language into the statute as appellant asks us to do in regard to Section 7.02(a)(2). Rather, the Flanagan court eliminated potential absurd results and conflicts in what constituted attempted crimes such as murder, aggravated assault, etc., by concluding that in order for a defendant to be convicted of attempted murder under Section 15.01, the "offense" which must have been specifically intended by the accused was the offense of killing the intended victim. See Flanagan, 675 S.W.2d at 742 (opinion on reh'g). Flanagan is consistent with longstanding statutory construction principles and reinforces our decision as set out hereafter.

At bottom, appellant asks us to construe Section 7.02(a)(2) to contain language clearly not found in the statute. He does not contend that the language of either Section 7.02(a)(2) or Section 19.02(b)(2) is ambiguous. Nor does he contend that the application

6

of Section 7.02(a)(2) leads to absurd results when it is applied literally, as written by the legislature, to Section 19.02(b)(2).  See Flanagan, 675 S.W.2d at 740-42.

We consider the language of the sections as written to be plain and unambiguous. We do not perceive the statutory language as leading to absurd results.  See Webb, 12 S.W.3d at 811.  Accordingly, we decline appellant's invitation to engraft new language onto Section 7.02(a)(2) to require that a person must have specific intent to kill in order to be criminally responsible for actions of another in committing murder as set out in Section 19.02(b)(2).  We conclude that the trial court did not err in failing to charge the jury that it could find appellant criminally responsible for Tovar's death only if the jury found that appellant had specific intent to kill Tovar.  We overrule appellant's first issue.

## III.  LEGAL SUFFICIENCY OF THE EVIDENCE

Appellant's second issue challenges the legal sufficiency of the evidence to prove that he had specific intent to kill Tovar.  Because we have determined that proof of such intent is not required under Section 7.02(a)(2) when applied to Section 19.02(b)(2), we need not and do not address the second issue.  TEX. R. APP. P. 47.1.

## IV.  CONCLUSION

Having overruled appellant's first issue and having no necessity to address his second issue, we affirm the judgment of the trial court.

7

Phil Johnson
Justice

Publish.