No. 04-02-00389-CV


James J. HARLESS,

Appellant


v.


Donald P. NILES and Mary Niles,

Appellees


From the 25th Judicial District Court, Guadalupe County, Texas 

Trial Court No. 00-0646-CV

Honorable Gus J. Strauss, Jr., Judge Presiding


Opinion by: Sandee Bryan Marion, Justice

 

Sitting: Catherine Stone, Justice

 Karen Angelini, Justice

 Sandee Bryan Marion, Justice


Delivered and Filed: December 24, 2002

 

AFFIRMED



 This interlocutory appeal arises from a lawsuit filed by Donald and Mary Niles against James
Harless. In their suit, the Niles sought damages for personal injury and property damage they
allegedly sustained when Harless's patrol car collided with their vehicle. Harless, a patrol supervisor
with the Guadalupe County Sheriff's Department, moved for summary judgment on the grounds that
he was entitled to official immunity. The trial court denied his motion, and this appeal ensued. See
Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5) (Vernon Supp. 2002). We affirm.

BACKGROUND

 On the morning of October 1, 1998, an individual reported suspicious activity, possibly
involving a burglary, to the Guadalupe County Sheriff's Department. The Sheriff's Department
dispatched Officer Gary Vega to the scene. Harless, who was on duty in his office at the Sheriff's
Department, and Deputy Jeff Gonzales decided to go to the scene as well. While driving on Interstate
Highway 10, Harless followed behind Vega's vehicle until losing sight of him. Harless drove with
his patrol car's overhead lights, headlights, and wig-wag lights (1) engaged, but he could not remember
whether he had turned on his siren. From I-10, Harless turned south onto FM 775. Once on FM
775, Harless disengaged his overhead lights because he did not want to alert any suspects involved
in the possible burglary. At this point, he was still three to four miles from the area of the purported
burglary. 

 FM 775 is a two-lane, farm-to-market road, divided by a broken yellow line. As Harless
topped a small hill on FM 775, while traveling at about sixty-five miles per hour, he saw the Niles'
vehicle approximately 100 yards ahead, also traveling south at a slower speed. Harless activated his
left-hand turn signal, slowed his speed to approximately fifty-five miles per hour, and moved into the
northbound lane in an attempt to pass the Niles' vehicle. At this moment, the Niles made a left-hand
turn directly into the path of Harless's vehicle. The vehicles collided at the point where the Niles'
driveway intersects with FM 775, in a passing zone. 

 Donald Niles, who was driving, admitted he did not see the patrol car until after the collision,
and he did not come to a full stop before attempting to turn into his driveway. He said he did not see
anyone behind him before he began his turn, but he could not remember whether he looked into his
rearview mirror before turning. Donald admitted the accident occurred in a passing zone. Donald
said that, just before the collision, he had slowed to approximately fifteen to twenty-five miles per
hour and had activated his left-turn signal before attempting the turn into his driveway. 

 Donald and Harless both allege they were injured in the accident. The Niles sued Harless for
damage to their car, Donald's injuries, and Mary's loss of consortium. Harless moved for summary
judgment on the affirmative defense of official immunity and filed a plea to the jurisdiction. The trial
court denied the motion for summary judgment, but the record does not reflect a ruling on the plea
to the jurisdiction.

IMMUNITY

 Harless asserts he is entitled to immunity from suit based upon Texas Tort Claims Act ("the
TTCA") sections 101.055 (providing that sovereign immunity is not waived for certain governmental
functions), 101.056 (providing that sovereign immunity is not waived when a governmental unit
exercises discretionary powers), and 101.062 (providing that sovereign immunity is waived in action
against a public agency only if response to 9-1-1 emergency call violates an applicable statute or
ordinance). See Tex. Civ. Prac. & Rem. Code Ann. §§ 101.055, 101.056, 101.062 (Vernon 1997).
The premise of his argument is that he is entitled to the protections afforded by the TTCA merely by
virtue of his position as an employee of a governmental unit of the State of Texas. We disagree.
While his position as an employee of the Guadalupe County Sheriff's Department may entitle him to
official immunity, his position does not necessarily entitle him to the exceptions to the waiver of
sovereign immunity provided under the TTCA.

 A plaintiff may sue a state employee in his or her official capacity, individual capacity, or both.
Denson v. T.D.C.J.-I.D., 63 S.W.3d 454, 460 (Tex. App.--Tyler 1999, pet. denied). The Niles did
not state in their petition whether their claims against Harless were brought against him in his official
capacity or his individual capacity. "When a petition fails to specify the capacity in which a person
is sued, we will look at the 'course of the proceedings' to determine the nature of the liability the
plaintiff seeks to impose." Nueces County v. Ferguson, No. 13-02-230-CV, 2002 WL 31662885,
at *4 (Tex. App.--Corpus Christi Nov. 27, 2002, no pet. h.) (citations and footnote omitted).

 The Niles' petition does not name the State of Texas, Guadalupe County, or the Sheriff's
Department as defendants. See Vela v. Rocha, 52 S.W.3d 398, 403 (Tex. App.--Corpus Christi
2001, pet. denied) (a suit against a government employee in his official capacity seeks to impose
liability on the governmental entity that employs him). The petition states Harless "is an individual
resident of Guadalupe County," and no where in the petition is he referred to in his official capacity.
The Niles asked for judgment against Harless personally based on his alleged negligence in operating
his vehicle, and they did not ask for relief under the TTCA. We conclude that the Niles sued Harless
in his individual capacity only. See id. (a suit against a government employee in his individual
capacity seeks to impose personal liability on the employee for actions he takes under color of state
law). Therefore, Harless was not entitled to rely on the exceptions to the waiver of sovereign
immunity contained in the TTCA. Nueces County, 2002 WL 31662885, at *3; see also Kazen, 887
S.W.2d at 12, 14 (government-employed medical personnel not entitled to official immunity, although
government medical facilities entitled to sovereign immunity). Accordingly, we consider only
whether the trial court erred in denying summary judgment on the basis of Harless's entitlement to
official immunity. See Copeland v. Boone, 866 S.W.2d 55, 58 (Tex. App.--San Antonio 1993, writ
dism'd w.o.j.) (fact that TTCA does not waive immunity is not a showing that sheriff enjoyed
immunity other than that of official immunity).

OFFICIAL IMMUNITY

 Official immunity is an affirmative defense that shields governmental employees from personal
liability so that they are encouraged to vigorously perform their official duties. Kassen, 887 S.W.2d
at 8. A governmental employee is entitled to official immunity for (1) the performance of
discretionary duties (2) that are within the scope of the employee's authority, (3) provided that the
employee acts in good faith. City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994); see
also DeWitt v. Harris County, 904 S.W.2d 650, 652 (Tex. 1995). In deciding whether an employee's
summary judgment proof conclusively establishes the official-immunity defense, we must determine
whether there are disputed facts material to its elements. In this case, the parties do not dispute that
at the time of the accident Harless was acting within the scope of his official duties. But they do
dispute whether he was performing a discretionary function in good faith.

DISCRETIONARY FUNCTION

 Those actions involving personal deliberation, decision, and judgment are discretionary;
whereas, those requiring obedience to orders or the performance of a duty to which the employee has
no choice are ministerial. Chambers, 883 S.W.2d at 654. The distinction between these two
categories is often one of degree because any official act that is ministerial still requires the employee
to use some discretion in its performance. Deaver v. Bridges, 47 S.W.3d 549, 553 (Tex. App.--San
Antonio 2000, no pet.). In determining whether an act is discretionary, the issue is whether an
employee was performing a discretionary function, not whether he had the discretion to do an
allegedly wrongful act while discharging that function or whether the employee's job description
included discretionary duties. Chambers, 883 S.W.2d at 653. Also, whether a government employee
was negligent is not relevant to this determination. City of Wichita Falls v. Norman, 963 S.W.2d
211, 215 (Tex. App.--Fort Worth 1998, pet. dism'd w.o.j.). If he was performing a discretionary
function, then he is protected by official immunity, regardless of whether he was negligent in the
exercise of his public duties. Id. Accordingly, our focus here is on whether Harless was performing
a discretionary function while operating his patrol car. Chambers, 883 S.W.2d at 653-54; Woods v.
Moody, 933 S.W.2d 306, 308 (Tex. App.--Houston [14th Dist.] 1996, no writ). 

 Harless characterizes his actions as discretionary because he contends he was on duty and
responding to an emergency call at the time of the accident. He contends that, while responding to
the emergency call, he exercised his discretion in deciding how to utilize his vehicle's emergency
equipment and in deciding when and where to pass the Niles' vehicle. The Niles counter that, aside
from Harless's and Gonzales's subjective beliefs, there is no evidence the call to the sheriff's office
about suspicious activity was an "emergency." The Niles also contend Harless was not responding
to the call in "emergency mode" because he was not dispatched to the scene and he was not utilizing
his vehicle's emergency equipment.

 We are unpersuaded by the Niles' argument that Harless was not performing a discretionary
function merely because he was not under orders to proceed to the scene of the alleged burglary. See
Chambers, 883 S.W.2d at 654-55 (Supreme Court did not distinguish between officer who saw
original moving violation and initiated pursuit, and three other officers who joined the chase in
holding that their pursuit was a discretionary act). Nor are we persuaded by the Niles' argument that
Harless was not performing a discretionary function merely because he had not activated all of his
vehicle's emergency equipment. See id. at 655 (holding that after deciding to pursue suspect, an
officer's actions necessarily involve his discretion in determining elements of pursuit such as speed,
route, whether to call for backup, or how closely to follow suspect's car).

 Instances in which police officers have retained official immunity in the operation of their
motor vehicles include when they are involved in a high speed chase, an investigation, or a traffic
stop. See Woods, 933 S.W.2d at 308 (and cases cited therein). On the other hand, operating a
vehicle in a non-emergency situation does not involve personal deliberation or the exercise of
professional expertise, decision, or judgment. Norman, 963 S.W.2d at 216 (mere fact that
motorcycle police officer was on patrol at time of accident did not entitle him to official immunity);
Woods, 933 S.W.2d at 308 (police officer's act of driving en route to "Harris County business" while
on duty held not discretionary). Accordingly, absent special circumstances that suggest the officer
was performing a discretionary function, an officer driving a motor vehicle while on official,
non-emergency business is performing a ministerial act. Woods, 933 S.W.2d at 308.

 Special circumstances will dictate when an "emergency situation" arises requiring an officer
to use personal deliberation or exercise professional expertise, decision, or judgment. See id. (holding
that decision to pursue a particular suspect fundamentally involves an officer's discretion because
officer initially must decide whether to undertake pursuit). Whether "special circumstances" are
present and whether the officer's actions involved personal deliberation or the exercise of professional
expertise, decision, or judgment is a fact question. See Texas Dept. of Public Safety v. Cordes, 85
S.W.3d 342 (Tex. App.--Austin 2002, no pet.); City of Houston v. Daniels, 66 S.W.3d 420, 425
(Tex. App.--Houston [14th Dist.] 2001, no pet.). In Chambers, the Supreme Court held as follows:

 The decision to pursue a particular suspect will fundamentally involve the
officer's discretion, because the officer must, in the first instance, elect whether to
undertake pursuit. Beyond the initial decision to engage in the chase, a high speed
pursuit involves the officer's discretion on a number of levels, including, which route
should be followed, at what speed, should back-up be called for, and how closely
should the fleeing vehicle be pursued. We hold that these police officers' engaging
in a high-speed chase was a discretionary act.


883 S.W.2d at 655. 

 The evidence here established that Harless was on-duty at the Sheriff's Department when
another officer was dispatched to the scene of "suspicious activity," and Harless alone made the
decision to drive from the sheriff's office to the scene. There is no dispute that neither Harless nor
Gonzales were under orders to proceed to the scene or to provide Vega with assistance. The sheriff's
office had no response priority "codes," and no further instructions were provided to Harless or
Gonzales as they left the sheriff's office. The record also establishes that Harless had activated some,
but not all, of his vehicle's emergency equipment. In his summary judgment affidavit, Harless stated
as follows:

 As patrol supervisor, it was my procedure to also respond to the 9-1-1
emergency call to lend assistance to the officer responding to such call. . . . As an
experienced police officer, I recognized that the situation being reported was
dangerous for the persons involved, the single officer at the scene by himself, and any
potential bystanders or neighbors. . . . I was trying to get to the scene of an
emergency as quickly as possible in order to assist those involved and prevent any
further criminal acts from occurring.


Gonzales stated in his summary judgment affidavit that,

 Deputy Vega was dispatched on this emergency 9-1-1 call and my patrol
supervisor, James J. Harless, was listening to the radio conversation regarding this
emergency call. Following procedure, [Harless] and I also responded to the 9-1-1
emergency call to lend assistance to [Vega] at the scene of the burglary in progress.


Both Harless and Gonzales said it was imperative that another officer reach the scene as quickly as
possible to restore order, subdue any violent offenders, apprehend criminal suspects, and make
appropriate arrests.



 We conclude the circumstances here are analogous to those in Chambers, and we hold that
an officer's decision to respond to a report of suspected on-going criminal activity involves an
officer's discretion because the officer initially must decide whether to provide assistance to other
officers at the scene of a possible on-going criminal offense. Accordingly, we hold that Harless was
performing a discretionary function when he decided to drive to the scene of a possible burglary to
lend assistance to another officer.

GOOD FAITH

 In determining whether an officer acted in good faith, we apply an objective legal
reasonableness test, disregarding the officer's subjective state of mind. See Wadewitz v. Montgomery,
951 S.W.2d 464, 466 (Tex. 1997); Chambers, 883 S.W.2d at 656. Simple subjective
pronouncements of good faith by an officer, or by experts supporting the officer's assertions, are
insufficient as a matter of law to meet the summary judgment movant's burden of showing good faith.
Wadewitz, 951 S.W.2d at 467. The test for good faith, in cases such as this, depends on how a
reasonably prudent officer could have assessed both the need to which an officer responds and the
risks of the officer's course of action, based on the officer's perception of the facts at the time of the
event. Id. Therefore, it is incumbent on an officer asserting official immunity not only to explain the
urgency of the circumstances requiring police intervention but also to address the degree, likelihood,
and obviousness of the risks created by the officer's actions. Id.

 The "need" aspect of the test for good faith refers to the urgency of the circumstances
requiring police intervention. Id. Need is determined by factors such as the seriousness of the crime
to which the officer responds, whether the officer's immediate presence is necessary to prevent injury
or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available
to achieve a comparable result. Id. The "risk" aspect of good faith refers to the countervailing public
safety concerns: the nature and severity of harm that the officer's actions could cause, the likelihood
that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent
officer. Id.

 Good faith may be established by the testimony of the defendant-officers, if the testimony is
clear, positive, direct, otherwise credible, free from contradiction, and readily controvertible. Smith
v. Davis, 999 S.W.2d 409, 415 (Tex. App.--Dallas 1999, no pet.); City of Coppell v. Waltman, 997
S.W.2d 633, 638 (Tex. App.--Dallas 1998, pet. denied). Good faith can be established as a matter
of law when the official's factual recitation is otherwise supported by the evidence. Medina County
Comm'rs Ct. v. The Integrity Group, Inc., 944 S.W.2d 6, 10 (Tex. App.--San Antonio 1996, no
writ); see also Murillo v. Garza, 881 S.W.2d 199, 202 (Tex. App.--San Antonio 1994, no writ)
(good faith not established by conclusory statements unsupported by evidence). In addition, good
faith can be established as a matter of law, despite an affidavit's failure to use the objective words
suggested by Chambers, if reasonable minds could not differ from the conclusion drawn from the
underlying facts. The Integrity Group, Inc., 944 S.W.2d at 10.

 If the officer presents sufficient proof to meet his initial summary judgment burden on the
issue of good faith, the non-movant must then controvert his proof with a showing elevated from that
usually required of non-movants in summary judgment proceedings. Chambers, 883 S.W.2d at 657.
The plaintiff must do more than show that a reasonably prudent officer could have acted differently;
the plaintiff must show that no reasonable person in the defendant's position could have thought the
facts were such that they justified defendant's acts. Id. Good faith is not defeated simply by a
showing that the officer was negligent. The test of good faith does not inquire into "what a
reasonable person would have done," but into "what a reasonable officer could have believed."
Wadewitz, 951 S.W.2d at 467 n. 1.

 To establish good faith, Harless relied upon his own testimony and that of Officer Gonzales.
Harless's and Gonzales's affidavits provide similar narrative accounts of the events leading up to the
accident. As to the "need" prong of the Chambers test, both officers said they recognized "that the
situation being reported was dangerous for the persons involved, the single officer at the scene by
himself, and any potential bystanders or neighbors." Both stated a need to reach the scene quickly
to restore order, subdue any violent offenders, apprehend criminal suspects, and make appropriate
arrests.

 As for the "risk" prong, Harless's affidavit recites the following: I did not perceive any significant risk or anticipate any harm to the public in
slightly exceeding the speed limit while on FM 775 due to the good visibility of the
roadway; the fact that Officer Vega had just traveled the same route in front of me;
the fact that I had my [sic] both my headlights and wig-wag lights on at the time; the
fact that I had not come across any other vehicles while traveling at this speed; the
fact that I slowed my vehicle to within the speed limit prior to beginning to pass the
Niles' vehicle; and the minimal traffic on FM 775 at the time.





Harless admitted he was traveling over the posted speed limit of fifty-five miles per hour when he
first saw the Niles' vehicle 100 yards ahead of him, as Harless topped a small hill. Gonzales stated
he thought Harless was operating the vehicle "reasonably and prudently at all times," and that
Harless complied with "any and all applicable procedures in his response to the emergency 9-1-1
call." Gonzales did not perceive any significant risk or anticipate any harm to the public from
Harless's decision to turn off his overhead lights, to not utilize his siren, or to exceed the speed limit.

 Although Harless's summary judgment evidence stated his perception of the "emergency"
nature of the 9-1-1 call, no summary judgment evidence supports his or Gonzales's subjective beliefs
about the alleged seriousness of the crime to which they were responding, or whether their
immediate presence was necessary to prevent injury or loss of life or to apprehend a suspect.
Likewise, although Harless's summary judgment evidence addressed his decision to deactivate his
overhead lights once he turned onto FM 775, it did not evaluate the risks associated with passing
another vehicle on the left-hand side of the road without the use of his overhead lights or siren, and
without some indication that the other driver saw his attempt to turn. Nor does Harless's summary
judgment evidence address what alternative courses of action, if any, were available to achieve a
comparable result. We conclude that Harless did not conclusively establish he acted in good faith,
and the trial court did not err in denying his motion for summary judgment. (2) Accordingly, we affirm
the trial court's judgment.

 Sandee Bryan Marion, Justice

PUBLISH


 

1. Wig-wag lights are a system attached to the vehicle's headlights that cause the headlights to flash.
2. To rebut good faith, the Niles relied, in part, on the affidavit of their expert, Douglas Rivers. In issue five
on appeal, Harless asserts that Rivers's affidavit provides no evidence that Harless did not act in good faith. We
disagree with Harless's contention that Rivers is unqualified to render an opinion on good faith. Rivers, who has over
twenty-four years' experience as a police officer, served for sixteen years as Assistant Chief of Police in Hondo, Texas;
eleven years as a police supervisor; was a police patrolman; and is now employed by the Bexar County Hospital District
Police Department. He has over 2300 hours of training with the Texas Commission on Law Enforcement Officers
Standards. Rivers has sufficient expertise to provide opinion testimony on whether Harless acted in good faith. We
also disagree with Harless's contention that Rivers is not an expert on accident reconstruction and his opinion was not
based on any tests or scientific evaluations. Rivers's opinion was directed at the propriety of Harless's actions in
proceeding to the scene of a purported burglary, the manner in which he used or did not use his vehicle's emergency
equipment, and whether Harless's actions constituted good faith. However, we do agree with Harless's contention that
Rivers's opinion does not show that "no reasonable person in the defendant's position could have thought the facts were
such that they justified defendant's acts." Rivers based his opinion on the Niles' petition, the Texas Department of
Public Safety's accident report, records from the Guadalupe County Sheriff's Department, the depositions of Donald
Niles, Harless, and Gonzales, and the affidavits of Harless and Gonzales. Rivers addressed the facts leading up to the
collision, and he concluded that Harless did not operate his patrol vehicle as a reasonable and prudent patrol officer
would have under the circumstances. Expert testimony on good faith "must address what a reasonable officer could
have believed under the circumstances . . . and must be substantiated with reference to each aspect of the Chambers
balancing test." Wadewitz, 951 S.W.2d at 466-67 (emphasis in original, citation omitted). Because Rivers did not
satisfy this test, his opinion testimony did not raise a fact issue on whether Harless acted in good faith. However,
because Harless's summary judgment evidence did not conclusively establish good faith, we need not consider whether
the Niles met their burden of rebutting good faith.