ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

August 29, 2005

The Honorable A. J. (Jack) Hartel
Liberty County Attorney
Post Office Box 9127
Liberty, Texas 77575-9127

Opinion No. GA-0353

Re: Allocation of county funds to a hospital district that does not comprise the entire county (RQ-0322-GA)

Dear Mr. Hartel:

Your office inquires about the allocation of county funds to the newly created Liberty County Hospital District No. 1 (the "District"). You inform us the District is wholly contained within Liberty County (the "County"), but its geographic territory is not conterminous with the County's geographic territory.[1] Pursuant to Health and Safety Code chapter 286, the applicable statute governing the creation of hospital districts, the County is obligated to transfer to the District, *inter alia*, its operating funds and reserves. *See* Request Letter, *supra* note 1, at 1; *see also* TEX. HEALTH & SAFETY CODE ANN. § 286.071 (Vernon 2001). At the same time, because the District does not comprise the entire County, the County must retain some funding in order to fulfill its obligations to provide care to County residents who do not reside within the District's geographic boundaries. *See* Request Letter, *supra* note 1, at 2. Thus, you present three formulas by which the County could divide the funds between the County and the District and ask us to opine whether the County can "use any one of the[] calculations, at its discretion" and still comply with the law. *Id.*

I.    **Legal Background**

A.    **Health and Safety Code Chapter 286**

You inform us that the District was created by special election pursuant to chapter 286 of the Texas Health and Safety Code. *See id.* at 1. Once created, a hospital district "assumes full responsibility for operating hospital facilities and for furnishing medical and hospital care for the district's needy inhabitants." TEX. HEALTH & SAFETY CODE ANN. § 286.073(a)(1) (Vernon 2001). Specifically, a hospital district is charged with supplying to "patient[s] residing in the district the care and treatment that the patient or a relative of the patient who is legally responsible for the patient's support cannot pay." *Id.* § 286.082(a). In addition to assuming the obligation to care for resident indigents, a hospital district is required to "assume[] any outstanding indebtedness incurred" by a political subdivision in which "all or part of the district is located in providing hospital care for residents of the territory of the district before the district's creation." *Id.* § 286.073(a)(2).

---

[1] *See* Request Letter from Mark Beausoleil, First Assistant County Attorney on behalf of Honorable A. J. (Jack) Hartel, Liberty County Attorney, to Honorable Greg Abbott, Texas Attorney General (Feb. 28, 2005) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

Political subdivisions in which a hospital district is located are required by chapter 286 to convey or transfer to the district:

> (1) title to land, buildings, improvements, and equipment related to the hospital system located wholly in the district that are owned by the [political subdivision] in which the district is located;

> (2) operating funds and reserves for operating expenses and funds that have been budgeted by the [political subdivision] in which the district is located to provide medical care *for residents of the district* for the remainder of the fiscal year in which the district is established;

> (3) taxes levied by the [political subdivision] in which the district is located for hospital purposes *for residents of the district* for the year in which the district is created; and

> (4) funds established for payment of indebtedness assumed by the district.

*Id.* § 286.071 (emphasis added). Your question relates to transferring operating funds under section 286.071(2). By its plain language, *see Carmona v. State*, 76 S.W.3d 29, 31 (Tex. App.–Amarillo 2001, pet. ref'd) ("We look to the literal text of the statute and apply the plain meaning of its words."), section 286.071 requires a political subdivision, here a county, to transfer only the operating funds necessary to provide care to the *"residents of the district."* TEX. HEALTH & SAFETY CODE ANN. § 286.071(2)-(3) (Vernon 2001) (emphasis added). Once a hospital district is created in a political subdivision, the political subdivision is thereafter prohibited from levying taxes or issuing bonds or other obligations "for hospital purposes or for providing medical care for the *residents of the district."* *Id.* § 286.072 (emphasis added).

**B.    Health and Safety Code Chapter 61 - Indigent Health Care and Treatment Act**

Pursuant to chapter 61 of the Texas Health and Safety Code, a county "shall provide health care assistance . . . to each of its eligible county residents." *Id.* § 61.022(a). An "eligible county resident" is a person who meets the income and resources requirements established by chapter 61 or the political subdivision, *see id.* § 61.002(3), (6), and who does not reside in the service area of a public hospital or hospital district. *See id.* § 61.002(2). A county is thus not required to provide "health care services" and assistance[2] to a county resident who resides in the service area of a public

---

[2]A county is directed by chapter 61 to provide the following basic health care services:

(1) primary and preventative services designed to meet the needs of the community, . . . ;

(2) inpatient and outpatient hospital services;

(3) rural health clinics;

(continued...)

hospital or hospital district. *Id.* § 61.033(a)(1). You do not ask about chapter 61 of the Health and Safety Code, but our examination of it reveals no requirements or guidelines directing a county's apportionment of the specified operating funds.

Thus, pursuant to chapter 286, a county in which a hospital district is created must transfer, among other things, its "operating funds and reserves for operating expenses and funds that have been budgeted . . . to provide medical care for residents of the district." *Id.* § 286.071(a)(2). And pursuant to chapter 61, a county is still charged with the duty to provide medical care assistance to each eligible county resident not residing within the hospital district's territory. *See id.* §§ 61.021-.022. Where a newly created hospital district encompasses an entire county, all county funds budgeted for indigent health care services should be transferred. However, where the territory of a new hospital district does not comprise the entire territory of the county, less than the whole amount of county funds is to be transferred. *See id.* § 286.071(2) (transfer of funds required to "provide medical care for residents of the district"). This is particularly true because that same county must still provide health care services for those indigent county residents who do not reside in the hospital district. *See id.* §§ 61.022(a), .028(a), .033(a)(1).

## II.    **Questions**

With this understanding of the issue confronting Liberty County, we address whether the County can use "any one of [three] calculations, at its discretion, and still be within the legal parameters of Health and Safety Code section 286.071." *See* Request Letter, *supra* note 1, at 2. The three calculations you suggest are:

(1) multiply the budgeted funds remaining for the year by the ratio derived from calculating the county's population residing within the district divided by the county's population for the entire county;

(2) multiply the budgeted funds remaining for the year by the ratio derived from calculating the geographical area inside the district divided by the geographical area of the entire county; or

---

[2](...continued)
    (4) laboratory and X-ray services;

    (5) family planning services;

    (6) physician services;

    (7) payment for not more than three prescription drugs a month; and

    (8) skilled nursing facility services, regardless of the patient's age.

TEX. HEALTH & SAFETY CODE ANN. § 61.028(a) (Vernon 2001).

(3)  multiply the budgeted funds remaining for the year by the ratio derived from calculating the county's indigent population that resides in the district divided by the county's indigent population for the entire county.

*Id.*

## III.    Analysis

With regard to the County, the commissioners court is the body to exercise discretion, particularly when it comes to the County's fiscal policy.  Pursuant to article V, section 18 of the Texas Constitution, a county commissioners court shall "exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State." TEX. CONST. art. V, § 18(b).  The commissioners court is the "county's principal governing body," and its "powers and duties . . . include aspects of legislative, executive, administrative, and judicial functions." *Comm'rs Ct. of Titus County v. Agan*, 940 S.W.2d 77, 79 (Tex. 1997).  And although "the legal basis for any action taken must be grounded ultimately in the constitution or statutes," a commissioners court may exercise broad discretion in conducting county business. *See Guynes v. Galveston County*, 861 S.W.2d 861, 863 (Tex. 1993) (citing *Canales v. Laughlin*, 214 S.W.2d 451, 453 (Tex. 1948)); *see also* Tex. Att'y Gen. Op. No. JM-788 (1987) at 1, 3.  Specifically, where a right is conferred or a duty imposed on it by the legislature, the commissioners court has broad discretion, subject to judicial review, to accomplish the purpose intended. *See Guynes*, 861 S.W.2d at 863; *see also Agan*, 940 S.W.2d at 81; Tex. Att'y Gen. Op. No. JM-788 (1987) at 3.  Moreover, a county "has the statutory authority to oversee the fiscal operation of the county by approving and authorizing a budget.  Generally, the allocation of county funds is a policy-making determination left to the sound discretion of the commissioners court." *Hooten v. Enriquez*, 863 S.W.2d 522, 529 (Tex. App.–El Paso 1993, no writ) (citations omitted).

An early Texas court of appeals decision defined discretion of "public functionaries" as the "power or right to act officially, according to what appears just and proper under the circumstances." *Permanent Rd. Comm'rs v. Johnson*, 231 S.W. 859, 860 (Tex. Civ. App.–Dallas 1921, no writ). Discretion has also been defined "'as the act or the liberty of deciding according to the principles of justice and one's ideas of what is right and proper under the circumstances, . . . deliberate judgment[,] . . . the power to discriminate and determine what, under existing circumstances, is right and proper.'" *Tex. Indem. Ins. Co. v. Arant*, 171 S.W.2d 915, 919 n.1 (Tex. Civ. App.–Eastland 1943, writ ref'd w.o.m.) (citation omitted); *see also Minns v. Piotrowski*, 904 S.W.2d 161, 168 (Tex. App.–Waco 1995, writ denied) ("'Discretion' signifies a power to choose among alternatives within legal bounds.").  The United States Supreme Court has recognized that discretion "implies the absence of a hard-and-fast rule." *The Steamship Styria v. Morgan*, 186 U.S. 1, 9 (1902). Discretionary acts can be contrasted with ministerial acts that "require obedience to orders or the performance of a duty to which the actor has no choice." *Deaver v. Bridges*, 47 S.W.3d 549, 553 (Tex. App.–San Antonio 2000, no pet).

Neither section 286.071 in particular, nor chapter 286 in general, provides a specific method or formula by which to allocate funds between the County and the newly created District. *See*

*generally* TEX. HEALTH & SAFETY CODE ANN. §§ 286.001-.181 (Vernon 2001) (chapter 286). Nor does chapter 61. *See generally id.* §§ 61.001-.066 (Vernon 2001 & Supp. 2004-05) (chapter 61). Section 286.071 requires the funds to be transferred so that the newly created District can provide the necessary care to the indigent residents of the District. *See id.* § 286.071(2) (Vernon 2001). The use of the phrase 'indigent residents' suggests that the two calculations utilizing population would yield a result more in line with the mandate of the statute. We recognize, however, that in addition to the needs of the indigent residents of the District, the proper allocation of the specified operating funds between the County and the District requires a decision based on the consideration and balancing of numerous options and factors particular to the County and the District, and might include geographic factors. Deciding between various alternatives based on consideration and analysis of competing factors requires deliberate judgment which is, by definition, an exercise of discretion. *See Johnson,* 231 S.W. at 860; *Arant,* 171 S.W.2d at 919 n.1. Accordingly, we conclude that the commissioners court, in its discretion and subject to judicial review, may use one of the three calculations presented or an alternative calculation, *see infra* at 5, and not run afoul of section 286.071 so long as the calculation provides for an allocation that enables the District to fulfill its obligation to provide care to indigent residents.

Chapter 286 does provide a formula, just not one that directly speaks to your question. Section 286.073(b) provides a specific formula that directs a new hospital district's assumption of a county's indebtedness. *See* TEX. HEALTH & SAFETY CODE ANN. § 286.073(b) (Vernon 2001). Where part of the political subdivision is included in the district and part is not included in the district, "the amount of indebtedness the district assumes . . . is that portion of the total outstanding indebtedness . . . for hospital care for all residents of the [political subdivision] that the value of taxable property in the district bears to the total value of taxable property in the [political subdivision] according to the last preceding approved assessment rolls . . . before the district is confirmed." *Id.*; *see also* TEX. CONST. art. IX, § 9. While this formula might be another alternative calculation, we do not believe this formula must be used to apportion the specified operating funds. The section 286.073(b) formula relates to indebtedness and is not part of section 286.071, which relates to the transfer of the specified operating funds. *See* TEX. HEALTH & SAFETY CODE ANN. § 286.071 (Vernon 2001). Moreover, the statutory formula in section 286.073(b) is necessary in context in that it requires the District to assume the portion of the County's indebtedness that is secured by the proportion of the taxable property contained within the District.

## IV.  Conclusion

Because we have concluded that apportionment of these funds is a discretionary matter for the commissioners court and because we believe the determination of which calculation to use involves consideration of factual issues, it is not appropriate for us to offer an opinion on the County's use of one particular calculation. *See* Tex. Att'y Gen. Op. Nos. GA-0003 (2002) at 1 n.2 (stating that the opinion process cannot resolve fact questions); JC-0020 (1999) at 2; JM-310 (1985) at 5. We remind you that the commissioners court's exercise of discretion is not unfettered. A district court has supervisory jurisdiction over a commissioners court when the commissioners court acts beyond its jurisdiction or clearly abuses its discretion. *See* TEX. CONST. art. V, § 8; *see also Ector County v. Stringer,* 843 S.W.2d 477, 479 (Tex. 1992). "If the commissioners court acts illegally, unreasonably, or arbitrarily, a district court may so adjudge." *Agan,* 940 S.W.2d at 80.

## S U M M A R Y

The Texas Health and Safety Code requires a county in which a hospital district is created to transfer to that district the county's operating funds budgeted to provide medical care for the district's indigent residents. Where the hospital district does not comprise the entire county, neither chapter 286 nor chapter 61 of the Health and Safety Code provide a specific method to apportion the operating funds between the county and the hospital district. The county commissioners court is the county's governing body and is vested with discretion over a county's fiscal policy. Absent a statutory mandate on the apportionment of the operating funds, the commissioners court may use its discretion, subject to judicial review, to choose the calculation by which to divide the funds, provided the resulting transfer comports with the statutory duty to provide care for the indigent residents of the district.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee